FILED
2017 Jan-31  AM 10:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into this ___ day of January 2017 by and between Vanessa Nelson ("Ms. Nelson") and Checksmart Financial, LLC ("Checksmart") and their predecessors, successors, assigns, affiliates, subsidiaries and related entities.

In this Agreement, Ms. Nelson and Checksmart are referred to collectively as the "Parties" and Checksmart and each of its parents, subsidiaries, affiliated or related entities, and all of their past and present owners, officers, directors, investors, insurers, managers, agents, employees, attorneys, supervisors, employee benefit plans and administrators and assigns of any of all of them are collectively referred to as the "Released Parties."

### RECITALS

WHEREAS, Ms. Nelson, a former employee of Checksmart, filed a lawsuit in the U.S. District Court for the Northern District of Alabama, against Checksmart styled *Ashley Harrell-Davis, Vanessa Nelson and Ieastsure Haynes v. Checksmart Financial, LLC,* case number 4:15-cv-01755-VEH, in which she asserted claims under the Fair Labor Standards Act. That case was subsequently compelled to arbitration and is pending before the American Arbitration Association (the "Lawsuit");

WHEREAS, Ms. Nelson also filed a charge against Checksmart with the Equal Employment Opportunity Commission, charge number 420-2016-00745, in which she asserted claims of race discrimination under Title VII of the Civil Rights Act of 1964 (the "Charge");

WHEREAS, the Released Parties deny any wrongdoing or liability to Ms. Nelson;

WHEREAS, the Parties have agreed to a resolution and settlement of Ms. Nelson's claims which included the Released Parties' agreement to pay Ms. Nelson the consideration stated herein in exchange for her binding releases and covenants in this Agreement. Ms. Nelson's releases and covenants included, but are not limited to, the covenant to dismiss the Lawsuit with prejudice, and not to bring any other lawsuit, action or legal proceeding against the Released Parties for any act or omission up to and including the effective date of this Agreement, and the release of any and all claims, causes of action, demands, damages, fees, costs, wages or other remuneration or allegations Ms. Nelson has asserted or could have asserted against the Released Parties based upon any act or omission up to and including the effective date of this Agreement (the "Claims"); and

WHEREAS, Ms. Nelson, in exchange for the consideration provided herein, is willing to execute the Agreement and to agree to its terms.

NOW, THEREFORE, in consideration of the promises, mutual covenants, understandings and agreements contained in this Agreement, and other good and valuable consideration received pursuant hereto, the receipt and sufficiency of which are hereby acknowledged by all Parties, and to settle all Claims as provided herein, it is hereby agreed by and between the Parties as follows:

1

## AGREEMENT

1. **Payments**. Following Ms. Nelson's execution of this Agreement, approval of this Agreement by the Court and entry of a stipulated judgment approving the settlement, and written request by Ms. Nelson to the EEOC to dismiss her Charge, Checksmart agrees, within seven business days thereafter to pay Ms. Nelson the total gross sum of Nine Thousand Eight Hundred and Twelve Dollars ($9,812.12). This amount shall be payable and allocated as follows: 1) a check for $4,406.06 payable for backwages and subject to withholding as w-2 income; 2) a check for $4,406.06 payable for liquidated damages and treated as 1099 income; 3) a check for $1,000 as additional consideration for non-Fair Labor Standards Act ("FLSA") claims. Ms. Nelson is solely responsible for the allocation and distribution of these payments. Checksmart also agrees to pay Ms. Nelson's counsel the total amount of $20,000 to satisfy any claims for attorney fees or costs in connection with claims by Ms. Nelson and two other individuals. One –third of this total $20,000 payment shall be allocable to attorney fees and costs for Ms. Nelson's claims.

2. **Covenant Not to Sue and Release of Claims**. Ms. Nelson, in consideration of the benefits and payments described in this Agreement, covenants not to sue the Released Parties in any equitable, legal or administrative lawsuit or proceeding for any Claims arising out of acts or omissions occurring prior to the Effective Date of this Agreement, including any Claims arising out of or relating to the Lawsuit, or her employment with any of the Released Parties or otherwise. Ms. Nelson releases and discharges the Released Parties from any and all Claims, whether known or unknown, including but not limited to,

   a. any Claims arising out of, or relating to her employment with, the Released Parties and/or the termination thereof, or otherwise concerning or relating to events, acts or omissions that occurred as a result of his application for, or employment with, or termination from employment with any of the Released Parties;

   b. any Claims of breach of express or implied contract, fraud, and any other common law cause of action, whether arising in contract or tort, arising out of or relating to her application for employment, employment or work with, and/or the termination from employment with the Released Parties, or otherwise, prior to the Effective Date of this Agreement;

   c. any Claims for back pay, front pay, benefits, liquidated damages, attorneys' fees, costs, sanctions, emotional distress, pain and suffering, compensatory damages, punitive damages, or any other type of damages;

   d. any Claims of harassment or discrimination based on any protected category, including, but not limited to, race, disability, gender, religion, national origin, sexual orientation, or genetics, including, but not limited to Claims for alleged violations of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Family and Medical Leave Act, the Fair Labor Standards Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, and/or any claims under federal or Alabama state law, including any claims for retaliatory discharge, and all amendments to any of the aforementioned acts prior to the Effective Date of this Agreement, and/or any claims under common law, including, but not limited to, any claims under state or federal law for discrimination, wrongful termination, harassment, and/or retaliation and/or any claims under any other state, federal or local law governing or in any way applying to her application for employment, employment, or work with or termination of

employment from the Released Parties, as well as any complaints, charges or grievances, pending or otherwise, against the Released Parties;

  e. any Claims for violations of any other federal, state, or local statutes or laws, including but not limited to violations of any other law, rule, regulation, or ordinance pertaining to employment, wages, compensation, hours worked, or any other aspect of her actual or prospective relationship with and/or termination from the Released Parties or otherwise; and

  f. any and all Claims which were or could have been alleged in the Lawsuit. Ms. Nelson agrees, that she will execute a joint stipulation of dismissal of the Lawsuit, with prejudice, immediately following her receipt of the settlement payments provided for in this Agreement.

  3. **Administrative Rights and Satisfaction of Claims**. This release is not to be construed as interfering with Ms. Nelson's right to testify, assist or participate in an administrative hearing or proceeding with any governmental agency. This Agreement does not limit Ms. Nelson's right to receive an award for information provided to the Securities and Exchange Commission, but she understands that by signing this Agreement, she otherwise agrees to waive any right to recover damages and any other benefits or remedies through any governmental charge, complaint, investigation or action. (excepting standard witness fees and mileage), including but not limited to, back pay, front pay, benefits, damages, punitive damages, attorney fees, reinstatement or any other type of equitable or legal relief, as a result of any such charge, lawsuit or claim.

  4. **Period to Consider and Other Representations**. Ms. Nelson represents and warrants (a) that this Agreement is written in a manner understood by her, (b) that she is waiving rights and claims in exchange for consideration in addition to anything of value to which she is already entitled, (c) that she has consulted with an attorney before executing this Agreement, (d) that she has been given a reasonable period of time to consider this Agreement, and (e) that, she is knowingly and voluntarily executing this Agreement.

  5. **Non-Disparagement**. Parties mutually agree to refrain from disparaging other parties, directly or indirectly. Ms. Nelson agrees that she will not apply for employment in the future with any of the Released Parties.

  6. **Confidentiality**. Ms. Nelson agrees that the existence and terms of this Agreement, as well as all discussions concerning and leading to this Agreement, are confidential. Accordingly, Ms. Nelson shall not disclose this Agreement, its existence, or the terms thereof, to any person or entity except as required or compelled by law including, but not limited to, any current, former, or future employee of Checksmart, provided, however, that Ms. Nelson may disclose the terms and existence of this Agreement to her attorney, tax advisor, and current spouse, if any. Ms. Nelson shall instruct any person(s) to whom she has or will make any disclosure of information within the scope of this paragraph that such information is strictly and completely confidential and such information shall not be disclosed by them to any other person or entity. If anyone asks Ms. Nelson about the status or resolution of her differences with the Released Parties, Ms. Nelson shall respond solely by stating that "the matter has been resolved." Upon request, Checksmart shall provide Ms. Nelson a neutral job reference stating her dates of employment, job title(s), rate(s) of pay, and her voluntary departure from employment. It is further understood and agreed that any breach of the provisions of this Paragraph shall be deemed a material breach of this Agreement. In

3

the event of such breach, proven in a court with competent jurisdiction, the Party alleging breach may pursue all remedies that may be available to them at law or equity.

7. **Ms. Nelson Bears the Tax Liabilities.** Ms. Nelson agrees that to the extent any federal or state taxes may be due or payable because of the payment herein made to Ms. Nelson or on her behalf (e.g. to Ms. Nelson's attorneys), Ms. Nelson will have sole responsibility for the payment of such taxes and will hold harmless and indemnify the Released Parties from and against all claims, penalties, fees, assessments, fines or other costs arising from said payment to Ms. Nelson and/or her attorney. The Released Parties will promptly notify Ms. Nelson, through their attorney, of any demand for payment of taxes or other payments by any taxing authority and Ms. Nelson will have the right to defend against the demand at her own expense the amount assessed by the taxing authority or pay the amount demanded.

8. **No Other Claims or Assignment of Claims.**

   a. Ms. Nelson represents and warrants that with the exception of the Lawsuit and Charge released herein, she has no claims, pending civil action, suit, arbitration, or legal proceeding against the Released Parties, nor has she assigned, pledged, or hypothecated any claims she had, has or may have against the Released Parties to any person and no other person has an interest in the Claims she is releasing herein, nor is she currently in bankruptcy.

   b. Ms. Nelson represents and warrants that no Medicaid payments have been made to her and that no liens, Claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any of the Claims or matter released herein. Ms. Nelson further agrees that she and not the Released Parties shall be responsible for satisfying all such liens, Claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

   c. It is understood and agreed that the Released Parties expressly rely upon Ms. Nelson's promises, representations, and warranties in this Agreement and that any breach of such promises, representations, and warranties would constitute a material breach of this Agreement.

9. **Full Release.** Ms. Nelson agrees that this Agreement shall release the Released Parties from all liability to the fullest extent permitted by law including, but not limited to, as to any claims for attorney fees or costs.

10. **Modifications to this Agreement.** This Agreement may not be changed orally; it may only be changed by a writing executed by the parties. A party's failure to enforce any provision of this Agreement will not constitute waiver of said party's rights under this Agreement.

11. **No Admissions of Liability.** This Agreement does not constitute an admission by any party of any violation of law or wrongdoing, and it will not be offered or used for that purpose. The parties expressly deny any violation of the law or liability to each other. Instead, this Agreement is a settlement compromise of a dispute that has arisen between the Parties.

12. **Full Agreement/Severability.** This Agreement constitutes the sole agreement between the Parties as to the subject matter hereof and supersedes any prior agreements and understandings relating to Ms. Nelson's Claims relating to her employment or the matters released by this Agreement. No party is relying upon any representation, understanding, undertaking, or

agreement not set forth in this Agreement, and each party expressly disclaims any reliance on any such representation, understanding, undertaking, or agreement. This Agreement is intended by the Parties to this Agreement to serve as a full and complete release except as to claims, if any, for breach of this Agreement. In the event that any provision or portion of this Agreement is held to be illegal, invalid or unenforceable, in whole or in part, for any reason, under present or future law, such provision or portion shall be severable and the remainder of this Agreement shall not be invalidated or rendered unenforceable or otherwise adversely affected.

13. **Binding Agreement**. This Agreement shall inure to the benefit of and is binding upon each of the parties and their assigns, successors, heirs, and representatives. The Parties agree that this Agreement may be executed by facsimile and in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

14. **Governing Law**. This Agreement shall be construed in accordance with the laws of the State of Alabama.

IT IS IMPORTANT THAT MS. NELSON COMPLETELY UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF THERE IS LANGUAGE MS. NELSON DOES NOT UNDERSTAND, SHE HAS BEEN ENCOURAGED TO ASK ABOUT IT AND HAS ASKED ABOUT IT BEFORE SIGNING THIS AGREEMENT. MS. NELSON IS RELEASING ALL CLAIMS THAT SHE MAY HAVE OR HAS HAD UP TO THE DATE OF THIS AGREEMENT AGAINST THE RELEASED PARTIES.

_____
Vanessa Nelson

Dated: 1/12/2017

Checksmart Financial, LLC

By: _____

Its: _____

Dated: _____

5

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into this ___ day of January 2017 by and between Ieastsure Haynes ("Ms. Haynes") and Checksmart Financial, LLC ("Checksmart") and their predecessors, successors, assigns, affiliates, subsidiaries and related entities.

In this Agreement, Ms. Haynes and Checksmart are referred to collectively as the "Parties" and Checksmart and each of its parents, subsidiaries, affiliated or related entities, and all of their past and present owners, officers, directors, investors, insurers, managers, agents, employees, attorneys, supervisors, employee benefit plans and administrators and assigns of any of all of them are collectively referred to as the "Released Parties."

### RECITALS

WHEREAS, Ms. Haynes, a former employee of Checksmart, filed a lawsuit in the U.S. District Court for the Northern District of Alabama, against Checksmart styled *Ashley Harrell-Davis, Vanessa Nelson and Ieastsure Haynes v. Checksmart Financial, LLC*, case number 4:15-cv-01755-VEH, in which she asserted claims under the Fair Labor Standards Act. That case was subsequently compelled to arbitration and is pending before the American Arbitration Association (the "Lawsuit");

WHEREAS, Ms. Haynes also filed a charge against Checksmart with the Equal Employment Opportunity Commission, charge number 420-2016-01884, in which she asserted claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 (the "Charge");

WHEREAS, the Released Parties deny any wrongdoing or liability to Ms. Haynes;

WHEREAS, the Parties have agreed to a resolution and settlement of Ms. Haynes's claims which included the Released Parties' agreement to pay Ms. Haynes the consideration stated herein in exchange for her binding releases and covenants in this Agreement. Ms. Haynes's releases and covenants included, but are not limited to, the covenant to dismiss the Lawsuit with prejudice, and not to bring any other lawsuit, action or legal proceeding against the Released Parties for any act or omission up to and including the effective date of this Agreement, and the release of any and all claims, causes of action, demands, damages, fees, costs, wages or other remuneration or allegations Ms. Haynes has asserted or could have asserted against the Released Parties based upon any act or omission up to and including the effective date of this Agreement (the "Claims"); and

WHEREAS, Ms. Haynes, in exchange for the consideration provided herein, is willing to execute the Agreement and to agree to its terms.

NOW, THEREFORE, in consideration of the promises, mutual covenants, understandings and agreements contained in this Agreement, and other good and valuable consideration received pursuant hereto, the receipt and sufficiency of which are hereby acknowledged by all Parties, and to settle all Claims as provided herein, it is hereby agreed by and between the Parties as follows:

1

## AGREEMENT

1. **Payments.**  Following Ms. Haynes's execution of this Agreement, approval of this Agreement by the Court and entry of a stipulated judgment approving the settlement, and written request by Ms. Haynes to the EEOC to dismiss her Charge, Checksmart agrees, within seven business days thereafter to pay Ms. Haynes the total gross sum of Eight Thousand and Eleven Dollars ($8,011.00).  This amount shall be payable and allocated as follows:  1) a check for $3,505.50 payable for backwages and subject to withholding as w-2 income; 2) a check for $3,505.50 payable for liquidated damages and treated as 1099 income; 3) a check for $1,000 as additional consideration for non-Fair Labor Standards Act ("FLSA") claims.  Ms. Haynes is solely responsible for the allocation and distribution of these payments.  Checksmart also agrees to pay Ms. Haynes's counsel the total amount of $20,000 to satisfy any claims for attorney fees or costs in connection with claims by Ms. Haynes and two other individuals.  One –third of this total $20,000 payment shall be allocable to attorney fees and costs for Ms. Haynes's claims.

2. **Covenant Not to Sue and Release of Claims.**  Ms. Haynes, in consideration of the benefits and payments described in this Agreement, covenants not to sue the Released Parties in any equitable, legal or administrative lawsuit or proceeding for any Claims arising out of acts or omissions occurring prior to the Effective Date of this Agreement, including any Claims arising out of or relating to the Lawsuit, or her employment with any of the Released Parties or otherwise.  Ms. Haynes releases and discharges the Released Parties from any and all Claims, whether known or unknown, including but not limited to,

   a. any Claims arising out of, or relating to her employment with, the Released Parties and/or the termination thereof, or otherwise concerning or relating to events, acts or omissions that occurred as a result of his application for, or employment with, or termination from employment with any of the Released Parties;

   b. any Claims of breach of express or implied contract, fraud, and any other common law cause of action, whether arising in contract or tort, arising out of or relating to her application for employment, employment or work with, and/or the termination from employment with the Released Parties, or otherwise, prior to the Effective Date of this Agreement;

   c. any Claims for back pay, front pay, benefits, liquidated damages, attorneys' fees, costs, sanctions, emotional distress, pain and suffering, compensatory damages, punitive damages, or any other type of damages;

   d. any Claims of harassment or discrimination based on any protected category, including, but not limited to, race, disability, gender, religion, national origin, sexual orientation, or genetics, including, but not limited to Claims for alleged violations of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Family and Medical Leave Act, the Fair Labor Standards Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, and/or any claims under federal or Alabama state law, including any claims for retaliatory discharge, and all amendments to any of the aforementioned acts prior to the Effective Date of this Agreement, and/or any claims under common law, including, but not limited to, any claims under state or federal law for discrimination, wrongful termination, harassment, and/or retaliation and/or any claims under any other state, federal or local law governing or in any way applying to her application for employment, employment, or work with or termination of

2

employment from the Released Parties, as well as any complaints, charges or grievances, pending or otherwise, against the Released Parties;

  e. any Claims for violations of any other federal, state, or local statutes or laws, including but not limited to violations of any other law, rule, regulation, or ordinance pertaining to employment, wages, compensation, hours worked, or any other aspect of her actual or prospective relationship with and/or termination from the Released Parties or otherwise; and

  f. any and all Claims which were or could have been alleged in the Lawsuit. Ms. Haynes agrees, that she will execute a joint stipulation of dismissal of the Lawsuit, with prejudice, immediately following her receipt of the settlement payments provided for in this Agreement.

  3. **Administrative Rights and Satisfaction of Claims**. This release is not to be construed as interfering with Ms. Haynes's right to testify, assist or participate in an administrative hearing or proceeding with any governmental agency. This Agreement does not limit Ms. Haynes's right to receive an award for information provided to the Securities and Exchange Commission, but she understands that by signing this Agreement, she otherwise agrees to waive any right to recover damages and any other benefits or remedies through any governmental charge, complaint, investigation or action. (excepting standard witness fees and mileage), including but not limited to, back pay, front pay, benefits, damages, punitive damages, attorney fees, reinstatement or any other type of equitable or legal relief, as a result of any such charge, lawsuit or claim.

  4. **Period to Consider and Other Representations**. Ms. Haynes represents and warrants (a) that this Agreement is written in a manner understood by her, (b) that she is waiving rights and claims in exchange for consideration in addition to anything of value to which she is already entitled, (c) that she has consulted with an attorney before executing this Agreement, (d) that she has been given a reasonable period of time to consider this Agreement, and (e) that, she is knowingly and voluntarily executing this Agreement.

  5. **Non-Disparagement**. Parties mutually agree to refrain from disparaging other parties, directly or indirectly. Ms. Haynes agrees that she will not apply for employment in the future with any of the Released Parties.

  6. **Confidentiality**. Ms. Haynes agrees that the existence and terms of this Agreement, as well as all discussions concerning and leading to this Agreement, are confidential. Accordingly, Ms. Haynes shall not disclose this Agreement, its existence, or the terms thereof, to any person or entity except as required or compelled by law including, but not limited to, any current, former, or future employee of Checksmart, provided, however, that Ms. Haynes may disclose the terms and existence of this Agreement to her attorney, tax advisor, and current spouse, if any. Ms. Haynes shall instruct any person(s) to whom she has or will make any disclosure of information within the scope of this paragraph that such information is strictly and completely confidential and such information shall not be disclosed by them to any other person or entity. If anyone asks Ms. Haynes about the status or resolution of her differences with the Released Parties, Ms. Haynes shall respond solely by stating that "the matter has been resolved." Upon request, Checksmart shall provide Ms. Haynes a neutral job reference stating her dates of employment, job title(s), rate(s) of pay, and her voluntary departure from employment. It is further understood and agreed that any breach of the provisions of this Paragraph shall be deemed a material breach of this Agreement. In the event of

3

such breach, proven in a court with competent jurisdiction, the Party alleging breach may pursue all remedies that may be available to them at law or equity.

7. **Ms. Haynes Bears the Tax Liabilities**. Ms. Haynes agrees that to the extent any federal or state taxes may be due or payable because of the payment herein made to Ms. Haynes or on her behalf (e.g. to Ms. Haynes's attorneys), Ms. Haynes will have sole responsibility for the payment of such taxes and will hold harmless and indemnify the Released Parties from and against all claims, penalties, fees, assessments, fines or other costs arising from said payment to Ms. Haynes and/or her attorney. The Released Parties will promptly notify Ms. Haynes, through their attorney, of any demand for payment of taxes or other payments by any taxing authority and Ms. Haynes will have the right to defend against the demand at her own expense the amount assessed by the taxing authority or pay the amount demanded.

8. **No Other Claims or Assignment of Claims**.

   a. Ms. Haynes represents and warrants that with the exception of the Lawsuit and Charge released herein, she has no claims, pending civil action, suit, arbitration, or legal proceeding against the Released Parties, nor has she assigned, pledged, or hypothecated any claims she had, has or may have against the Released Parties to any person and no other person has an interest in the Claims she is releasing herein, nor is she currently in bankruptcy.

   b. Ms. Haynes represents and warrants that no Medicaid payments have been made to her and that no liens, Claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any of the Claims or matter released herein. Ms. Haynes further agrees that she and not the Released Parties shall be responsible for satisfying all such liens, Claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

   c. It is understood and agreed that the Released Parties expressly rely upon Ms. Haynes's promises, representations, and warranties in this Agreement and that any breach of such promises, representations, and warranties would constitute a material breach of this Agreement.

9. **Full Release**. Ms. Haynes agrees that this Agreement shall release the Released Parties from all liability to the fullest extent permitted by law including, but not limited to, as to any claims for attorney fees or costs.

10. **Modifications to this Agreement**. This Agreement may not be changed orally; it may only be changed by a writing executed by the parties. A party's failure to enforce any provision of this Agreement will not constitute waiver of said party's rights under this Agreement.

11. **No Admissions of Liability**. This Agreement does not constitute an admission by any party of any violation of law or wrongdoing, and it will not be offered or used for that purpose. The parties expressly deny any violation of the law or liability to each other. Instead, this Agreement is a settlement compromise of a dispute that has arisen between the Parties.

12. **Full Agreement/Severability**. This Agreement constitutes the sole agreement between the Parties as to the subject matter hereof and supersedes any prior agreements and understandings relating to Ms. Haynes's Claims relating to her employment or the matters released by this Agreement. No party is relying upon any representation, understanding, undertaking, or

4

agreement not set forth in this Agreement, and each party expressly disclaims any reliance on any such representation, understanding, undertaking, or agreement. This Agreement is intended by the Parties to this Agreement to serve as a full and complete release except as to claims, if any, for breach of this Agreement. In the event that any provision or portion of this Agreement is held to be illegal, invalid or unenforceable, in whole or in part, for any reason, under present or future law, such provision or portion shall be severable and the remainder of this Agreement shall not be invalidated or rendered unenforceable or otherwise adversely affected.

13. **Binding Agreement**. This Agreement shall inure to the benefit of and is binding upon each of the parties and their assigns, successors, heirs, and representatives. The Parties agree that this Agreement may be executed by facsimile and in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

14. **Governing Law**. This Agreement shall be construed in accordance with the laws of the State of Alabama.

IT IS IMPORTANT THAT MS. HAYNES COMPLETELY UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF THERE IS LANGUAGE MS. HAYNES DOES NOT UNDERSTAND, SHE HAS BEEN ENCOURAGED TO ASK ABOUT IT AND HAS ASKED ABOUT IT BEFORE SIGNING THIS AGREEMENT. MS. HAYNES IS RELEASING ALL CLAIMS THAT SHE MAY HAVE OR HAS HAD UP TO THE DATE OF THIS AGREEMENT AGAINST THE RELEASED PARTIES.

_____
Leastsure Haynes

Dated: Jan 12, 2017

_____
Checksmart Financial, LLC

By: _____

Its: _____

Dated: _____

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into this ___ day of January 2017 by and between Ashley Harrell-Davis ("Ms. Harrell-Davis") and Checksmart Financial, LLC ("Checksmart") and their predecessors, successors, assigns, affiliates, subsidiaries and related entities.

In this Agreement, Ms. Harrell-Davis and Checksmart are referred to collectively as the "Parties" and Checksmart and each of its parents, subsidiaries, affiliated or related entities, and all of their past and present owners, officers, directors, investors, insurers, managers, agents, employees, attorneys, supervisors, employee benefit plans and administrators and assigns of any of all of them are collectively referred to as the "Released Parties."

### RECITALS

WHEREAS, Ms. Harrell-Davis, a former employee of Checksmart, filed a lawsuit in the U.S. District Court for the Northern District of Alabama, against Checksmart styled *Ashley Harrell-Davis, Vanessa Nelson and Ieastsure Haynes v. Checksmart Financial, LLC*, case number 4:15-cv-01755-VEH, in which she asserted claims under the Fair Labor Standards Act. That case was subsequently compelled to arbitration and is pending before the American Arbitration Association (the "Lawsuit");

WHEREAS, Ms. Harrell-Davis also filed a charge against Checksmart with the Equal Employment Opportunity Commission, charge number 420-2016-00903, in which she asserted claims of race discrimination under Title VII of the Civil Rights Act of 1964 (the "Charge");

WHEREAS, the Released Parties deny any wrongdoing or liability to Ms. Harrell-Davis;

WHEREAS, the Parties have agreed to a resolution and settlement of Ms. Harrell-Davis's claims which included the Released Parties' agreement to pay Ms. Harrell-Davis the consideration stated herein in exchange for her binding releases and covenants in this Agreement. Ms. Harrell-Davis's releases and covenants included, but are not limited to, the covenant to dismiss the Lawsuit with prejudice, to request in writing that the EEOC dismiss the Charge, and not to bring any other lawsuit, action or legal proceeding against the Released Parties for any act or omission up to and including the effective date of this Agreement, and the release of any and all claims, causes of action, demands, damages, fees, costs, wages or other remuneration or allegations Ms. Harrell-Davis has asserted or could have asserted against the Released Parties based upon any act or omission up to and including the effective date of this Agreement (the "Claims"); and

WHEREAS, Ms. Harrell-Davis, in exchange for the consideration provided herein, is willing to execute the Agreement and to agree to its terms.

NOW, THEREFORE, in consideration of the promises, mutual covenants, understandings and agreements contained in this Agreement, and other good and valuable consideration received pursuant hereto, the receipt and sufficiency of which are hereby acknowledged by all Parties, and to settle all Claims as provided herein, it is hereby agreed by and between the Parties as follows:

1

# AGREEMENT

1. **Payments**. Following Ms. Harrell-Davis's execution of this Agreement, approval of this Agreement by the Court and entry of a stipulated judgment approving the settlement, and written request by Ms. Harrell-Davis to the EEOC to dismiss her Charge, Checksmart agrees, within seven business days thereafter to pay Ms. Harrell-Davis the total gross sum of Eight Thousand Three Hundred and Seventeen Dollars and Seventy Six Cents ($8,317.76). This amount shall be payable and allocated as follows: 1) a check for $3,658.88 payable for backwages and subject to withholding as w-2 income; 2) a check for $3,658.88 payable for liquidated damages and treated as 1099 income; 3) a check for $1,000 as additional consideration for non-Fair Labor Standards Act claims. Ms. Harrell-Davis is solely responsible for the allocation and distribution of these payments. Checksmart also agrees to pay Ms. Harrell-Davis's counsel the total amount of $20,000 to satisfy any claims for attorney fees or costs in connection with claims by Ms. Harrell-Davis and two other individuals. One –third of this total $20,000 payment shall be allocable to attorney fees and costs for Ms. Harrell-Davis's claims.

2. **Covenant Not to Sue and Release of Claims**. Ms. Harrell-Davis, in consideration of the benefits and payments described in this Agreement, covenants not to sue the Released Parties in any equitable, legal or administrative lawsuit or proceeding for any Claims arising out of acts or omissions occurring prior to the Effective Date of this Agreement, including any Claims arising out of or relating to the Lawsuit, or her employment with any of the Released Parties or otherwise. Ms. Harrell-Davis releases and discharges the Released Parties from any and all Claims, whether known or unknown, including but not limited to,

    a. any Claims arising out of, or relating to her employment with, the Released Parties and/or the termination thereof, or otherwise concerning or relating to events, acts or omissions that occurred as a result of his application for, or employment with, or termination from employment with any of the Released Parties;

    b. any Claims of breach of express or implied contract, fraud, and any other common law cause of action, whether arising in contract or tort, arising out of or relating to her application for employment, employment or work with, and/or the termination from employment with the Released Parties, or otherwise, prior to the Effective Date of this Agreement;

    c. any Claims for back pay, front pay, benefits, liquidated damages, attorneys' fees, costs, sanctions, emotional distress, pain and suffering, compensatory damages, punitive damages, or any other type of damages;

    d. any Claims of harassment or discrimination based on any protected category, including, but not limited to, race, disability, gender, religion, national origin, sexual orientation, or genetics, including, but not limited to Claims for alleged violations of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, 42 U.S.C. § 1981, the Family and Medical Leave Act, the Fair Labor Standards Act, the Americans with Disabilities Act, the Employee Retirement Income Security Act, and/or any claims under federal or Alabama state law, including any claims for retaliatory discharge, and all amendments to any of the aforementioned acts prior to the Effective Date of this Agreement, and/or any claims under common law, including, but not limited to, any claims under state or federal law for discrimination, wrongful termination, harassment, and/or retaliation and/or any claims under any other state, federal or local law governing or in any way applying to her application for employment, employment, or work with or termination of

employment from the Released Parties, as well as any complaints, charges or grievances, pending or otherwise, against the Released Parties;

  e. any Claims for violations of any other federal, state, or local statutes or laws, including but not limited to violations of any other law, rule, regulation, or ordinance pertaining to employment, wages, compensation, hours worked, or any other aspect of her actual or prospective relationship with and/or termination from the Released Parties or otherwise; and

  f. any and all Claims which were or could have been alleged in the Lawsuit. Ms. Harrell-Davis agrees, that she will execute a joint stipulation of dismissal of the Lawsuit, with prejudice, immediately following her receipt of the settlement payments provided for in this Agreement.

  g. Nothing in this release prohibits Ms. Harrell-Davis from pursuing claims against third parties, such as an insurer, other than Checksmart and its related or affiliated entities, for a claim for benefits under the Employee Retirement Income Security Act.

  3. **Administrative Rights and Satisfaction of Claims**. This release is not to be construed as interfering with Ms. Harrell-Davis's right to testify, assist or participate in an administrative hearing or proceeding with any governmental agency. This Agreement does not limit Ms. Harrell-Davis's right to receive an award for information provided to the Securities and Exchange Commission, but she understands that by signing this Agreement, she otherwise agrees to waive any right to recover damages and any other benefits or remedies through any governmental charge, complaint, investigation or action. (excepting standard witness fees and mileage), including but not limited to, back pay, front pay, benefits, damages, punitive damages, attorney fees, reinstatement or any other type of equitable or legal relief, as a result of any such charge, lawsuit or claim.

  4. **Period to Consider and Other Representations**. Ms. Harrell-Davis represents and warrants (a) that this Agreement is written in a manner understood by her, (b) that she is waiving rights and claims in exchange for consideration in addition to anything of value to which she is already entitled, (c) that she has consulted with an attorney before executing this Agreement, (d) that she has been given a reasonable period of time to consider this Agreement, and (e) that, she is knowingly and voluntarily executing this Agreement.

  5. **Non-Disparagement**. Ms. Harrell-Davis agrees to refrain from disparaging Checksmart or any of the Released Parties, directly or indirectly. Ms. Harrell-Davis agrees that she is on a leave of absence from Checksmart and states that she is unable to work and does not plan to return to work at Checksmart. She agrees that she will not apply for employment in the future with any of the Released Parties.

  6. **Confidentiality**. Ms. Harrell-Davis agrees that the existence and terms of this Agreement, as well as all discussions concerning and leading to this Agreement, are confidential. Accordingly, Ms. Harrell-Davis shall not disclose this Agreement, its existence, or the terms thereof, to any person or entity except as required or compelled by law including, but not limited to, any current, former, or future employee of Checksmart, provided, however, that Ms. Harrell-Davis may disclose the terms and existence of this Agreement to her attorney, tax advisor, and current spouse, if any. Ms. Harrell-Davis shall instruct any person(s) to whom she has or will make any disclosure of information within the scope of this paragraph that such information is

strictly and completely confidential and such information shall not be disclosed by them to any other person or entity. If anyone asks Ms. Harrell-Davis about the status or resolution of her differences with the Released Parties, Ms. Harrell-Davis shall respond solely by stating that "the matter has been resolved." It is further understood and agreed that any breach of the provisions of this Paragraph shall be deemed a material breach of this Agreement. In the event of such breach, proven in a court with competent jurisdiction, the Party alleging breach may pursue all remedies that may be available to them at law or equity.

7. **Ms. Harrell-Davis Bears the Tax Liabilities**. Ms. Harrell-Davis agrees that to the extent any federal or state taxes may be due or payable because of the payment herein made to Ms. Harrell-Davis or on her behalf (e.g. to Ms. Harrell-Davis's attorneys), Ms. Harrell-Davis will have sole responsibility for the payment of such taxes and will hold harmless and indemnify the Released Parties from and against all claims, penalties, fees, assessments, fines or other costs arising from said payment to Ms. Harrell-Davis and/or her attorney. The Released Parties will promptly notify Ms. Harrell-Davis, through their attorney, of any demand for payment of taxes or other payments by any taxing authority and Ms. Harrell-Davis will have the right to defend against the demand at her own expense the amount assessed by the taxing authority or pay the amount demanded.

8. **No Other Claims or Assignment of Claims**.

   a. Ms. Harrell-Davis represents and warrants that with the exception of the Lawsuit and Charge released herein, she has no claims, pending civil action, suit, arbitration, or legal proceeding against the Released Parties, nor has she assigned, pledged, or hypothecated any claims she had, has or may have against the Released Parties to any person and no other person has an interest in the Claims she is releasing herein, nor is she currently in bankruptcy.

   b. Ms. Harrell-Davis represents and warrants that no Medicaid payments have been made to her and that no liens, Claims, demands, subrogated interests, or causes of action of any nature or character exist or have been asserted arising from or related to any of the Claims or matter released herein. Ms. Harrell-Davis further agrees that she and not the Released Parties shall be responsible for satisfying all such liens, Claims, demands, subrogated interests, or causes of action that may exist or have been asserted or that may in the future exist or be asserted.

   c. It is understood and agreed that the Released Parties expressly rely upon Ms. Harrell-Davis's promises, representations, and warranties in this Agreement and that any breach of such promises, representations, and warranties would constitute a material breach of this Agreement.

9. **Full Release**. Ms. Harrell-Davis agrees that this Agreement shall release the Released Parties from all liability to the fullest extent permitted by law including, but not limited to, as to any claims for attorney fees or costs.

10. **Modifications to this Agreement**. This Agreement may not be changed orally; it may only be changed by a writing executed by the parties. A party's failure to enforce any provision of this Agreement will not constitute waiver of said party's rights under this Agreement.

11. **No Admissions of Liability**. This Agreement does not constitute an admission by any party of any violation of law or wrongdoing, and it will not be offered or used for that purpose.

4

The parties expressly deny any violation of the law or liability to each other. Instead, this Agreement is a settlement compromise of a dispute that has arisen between the Parties.

12. **Full Agreement/Severability.** This Agreement constitutes the sole agreement between the Parties as to the subject matter hereof and supersedes any prior agreements and understandings relating to Ms. Harrell-Davis's Claims relating to her employment or the matters released by this Agreement. No party is relying upon any representation, understanding, undertaking, or agreement not set forth in this Agreement, and each party expressly disclaims any reliance on any such representation, understanding, undertaking, or agreement. This Agreement is intended by the Parties to this Agreement to serve as a full and complete release except as to claims, if any, for breach of this Agreement. In the event that any provision or portion of this Agreement is held to be illegal, invalid or unenforceable, in whole or in part, for any reason, under present or future law, such provision or portion shall be severable and the remainder of this Agreement shall not be invalidated or rendered unenforceable or otherwise adversely affected.

13. **Binding Agreement.** This Agreement shall inure to the benefit of and is binding upon each of the parties and their assigns, successors, heirs, and representatives. The Parties agree that this Agreement may be executed by facsimile and in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

14. **Governing Law.** This Agreement shall be construed in accordance with the laws of the State of Alabama.

IT IS IMPORTANT THAT MS. HARRELL-DAVIS COMPLETELY UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF THERE IS LANGUAGE MS. HARRELL-DAVIS DOES NOT UNDERSTAND, SHE HAS BEEN ENCOURAGED TO ASK ABOUT IT AND HAS ASKED ABOUT IT BEFORE SIGNING THIS AGREEMENT. MS. HARRELL-DAVIS IS RELEASING ALL CLAIMS THAT SHE MAY HAVE OR HAS HAD UP TO THE DATE OF THIS AGREEMENT AGAINST THE RELEASED PARTIES.

_____
Ashley Harrell-Davis

Dated: Jan 13, 2017

Checksmart Financial, LLC

By: _____

Its: _____

Dated: _____